**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Case Number: 0:10-cv-60882-LENARD/O'SULLIVAN**

| | | |
|---|---|---|
| EMESS CAPITAL, LLC, | ) | |
| | ) | **DEFENDANT TD BANK, N.A.'S** |
| Plaintiffs, | ) | **MOTION TO DISMISS PLAINTIFF'S** |
| | ) | **AMENDED COMPLAINT AND** |
| vs. | ) | **INCORPORATED** |
| | ) | **MEMORANDUM OF LAW** |
| SCOTT W. ROTHSTEIN and TD | ) | |
| BANK, N.A., | ) | |
| | ) | |
| Defendants. | ) | |

Pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b), Defendant TD Bank, N.A. ("TD Bank" or the "Bank") moves to dismiss the Amended Complaint ("Compl.") of Plaintiff Emess Capital LLC ("Emess") for failure to state a claim upon which relief may be granted and failure to plead its claims with sufficient particularity as detailed below in the Bank's Memorandum of Law.

## INTRODUCTION

On May 26, 2010, Emess filed its original complaint against TD Bank, claiming that the Bank operated a Ponzi scheme in concert with incarcerated con man, Scott Rothstein ("Rothstein"). As these allegations showed, however, Rothstein alone created and directed the scam while the Bank provided legitimate banking services. On December 21, 2011, this Court dismissed Emess' RICO claims under 18 U.S.C. § 1962(c) because it failed to adequately allege that TD Bank engaged in a pattern of racketeering activity, adopting Magistrate Judge Goodman's Report.[1] Order[2] at 7-14. Judge Goodman noted that Emess "*may well confront significant challenges* in satisfying the . . . operation or control test" to adequately bring RICO claims against TD Bank. Report at 7-11, 21-22 (emphasis added).

---

[1] *See* February 9, 2011 Report and Recommendations, Dkt. No. 76 ("Report").
[2] *See* December 21, 2011 Order Adopting Report and Recommendation of Magistrate Judge, Dkt. No. 130 ("Order").

On May 2, 2012, Emess filed its Amended Complaint, again alleging RICO claims and a new civil conspiracy claim against TD Bank.  Emess' RICO claims, however, are barred by the Private Securities Litigation Reform Act ("PSLRA"), 18 U.S.C. § 1964(c).  Further, even after months of discovery and many depositions, Emess does not (and cannot) allege facts showing that TD Bank: (i) directed an enterprise run solely by Rothstein; (ii) engaged in a pattern of racketeering activity over a period of more than two years; (iii) acquiesced to the actions of its low-level employees; (iv) agreed with Rothstein to violate acts distinct from those underlying Emess' alleged RICO claim; and (v) agreed with Rothstein to commit independent wrongs.  Accordingly, Emess' claims for RICO violations, RICO conspiracy, and civil conspiracy should be dismissed with prejudice.

## ALLEGATIONS[3]

The events described in Emess' Amended Complaint begin in either 2005 or 2006,[4] when Rothstein "promoted, managed and supervised" an elaborate fraud to sell bogus "structured settlements" to investors.  Compl. ¶¶ 15-16.  Rothstein concealed this scheme through false statements and fictitious documents.  *Id*. at ¶ 16.  Emess contends that, from the start, Rothstein knew that he needed banks to add legitimacy to his operation.  *Id*. at ¶ 17.  As such, from 2005 through mid 2008, Rothstein operated the scheme using his firm's accounts at Gibraltar Private Bank and Trust Company and other institutions.  *Id.* at ¶¶ 16, 18.  Significantly, Emess does not allege that either it or TD Bank were involved in Rothstein's scheme during this time.  *Id.*

---

[3] TD Bank accepts the well-pled allegations in the Amended Complaint and Emess' Civil RICO Case Stmt., Dkt. No. 11, ("RICO Stmt") solely for purposes of this Motion to Dismiss.

[4] Despite reaping significant discovery from many cases involving Rothstein's scheme, Emess still cannot precisely allege when the scam began—Emess uses both 2005 and 2006 as its starting point at various points in the Amended Complaint.  Compl. ¶¶ 86, 97 (2005); 15, 18 (2006).

After carrying out his scam for two to three years with multiple other banks, Emess alleges that Rothstein opened three accounts at TD Bank in November of 2007, which was Rothstein's first involvement with TD Bank.  *Id.* at ¶ 21.  Emess does not allege that Rothstein made any banking transactions with TD Bank at this time or had any communication with anyone from TD Bank regarding "structured settlements" or his other banking needs.  In fact, Emess does not allege that Rothstein had any further contact with TD Bank until April 2008, when Emess alleges Rothstein first engaged in transactions at the Bank.  *Id.* at ¶ 22.

In June 2009, Emess first learned of the structured settlement investment opportunities from Rothstein and Michael Szafranski ("Szafranski").  *Id.* at ¶¶ 51-52.  Szafranski served as the "*sole* independent verifier" of these confidential settlements and assured Emess that he had reviewed Rothstein's TD Bank account balances, which contained the settlement funds that would be used to pay large gains to Emess.  *Id.* (emphasis added).  Emess concedes that, as to the existence, negotiation and terms of the investment agreements, it dealt exclusively with Rothstein and Szafranski, from whom it purchased 15 "fictitious settlements."  *Id.* at ¶¶ 51-52, 71.  Emess also acknowledges that it received more than $26,000,000 in investment returns.  *Id.* at ¶¶ 28, 67, 68; RICO Stmt. at §§ (d)(1), (o)(1), (q)(1).

Emess alleges that Rothstein used TD Bank as a depository for the funds Emess invested in Rothstein's scheme.  Compl. ¶ 60.  More particularly, Emess alleges that: (i) TD Bank opened accounts at the Rothstein's request, *id.* at ¶ 21; (ii) wired funds at Rothstein's direction, *id.* at ¶ 28; (iii) provided Rothstein—not Emess—with letters confirming that it would follow Rothstein's direction as to funds in his accounts, *id.* at ¶ 56, Ex. A; RICO Stmt., 9, 11; (iv) provided Rothstein—not Emess—with account balance statements, Compl. ¶ 36; and (v) met an

3

Emess member at Rothstein's request. *Id*. at ¶ 61. These factual allegations fail to give rise to claims for RICO violations, RICO conspiracy, or civil conspiracy.

## STANDARD OF REVIEW

A complaint should be dismissed under Rule 12(b)(6) where it fails to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads ***factual content*** that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (emphasis added); *see also Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289-90 (11th Cir. 2010). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*. A pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678.

Moreover, fraud-based (including RICO) claims must be pled with particularized factual allegations required by Fed. R. Civ. P. 9(b) to survive dismissal. *Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007). A complaint fails to satisfy Rule 9(b) absent allegations of: "(1) the *precise statements*, documents, or misrepresentations made; (2) the *time and place* of and *person responsible for* the statement; (3) the *content and manner* in which the statements misled the Plaintiffs; and (4) *what the Defendants gained* by the alleged fraud." *Walker v. Hallmark Bank & Trust, Ltd.*, 707 F. Supp. 2d 1317, 1322 (S.D. Fla. 2010) (Cohn, J.), *quoting Ambrosia*, 482 F.3d at 1316-17 (emphasis added).

## ARGUMENT

### I.     The PSLRA Bars Emess' RICO Claims.

The PSLRA precludes a plaintiff from relying on "conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962 [RICO]." 18 U.S.C. § 1964(c). To constitute conduct that is "actionable as fraud in the purchase

or sale of securities," the alleged fraud must be "in connection with" the purchase or sale of securities. *Loftin v. KPMG LLP*, No. 02-81166-CIV, 2002 U.S. Dist. LEXIS 26909, at *6 (S.D. Fla. Sept. 10, 2003) (citing *SEC v. Zandford*, 535 U.S. 813, 820, 122 S. Ct. 1899, 153 L. Ed. 2d 1 (2002)).  Fraudulent conduct is "in connection with" the purchase or sale of securities when the alleged fraud "coincides" with securities transactions and the events are "not independent." *Zandford*, 535 U.S. at 820.  The prohibition bars reliance on any predicate act regardless of whether a plaintiff can or does plead an action under the securities laws.  *MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 651 F.3d 268, 280 (2d Cir. 2011); *Eagletech Commc'ns, Inc. v. Citigroup, Inc.*, No. 07-60668, 2008 U.S. Dist. LEXIS 49432, at *35-38 (S.D. Fla. June 25, 2008).

A "security" is broadly defined under the federal securities laws to include "virtually any instrument that might be sold as an investment," including "investment contracts."  *SEC v. Edwards*, 540 U.S. 389, 393 (2004); 15 U.S.C. § 77b(a)(1); 15 U.S.C. § 78c(c)(10).  While the securities laws do not define "investment contract," the Supreme Court has held that any scheme involving "an investment of money in a common enterprise with profits to come solely from the efforts of others" is an "investment contract."  *Edwards*, 540 U.S. at 393 (citing *SEC v. W. J. Howey Co.*, 328 U.S. 293, 301 (1946)); *see also Loftin,* 2002 U.S. Dist. LEXIS at *20-21.

The Ponzi scheme conduct alleged by Emess is actionable as securities fraud.  Emess alleges that it was fraudulently induced to purchase structured settlements at a discounted value in exchange for an expected fixed rate of return based on the full value of the structured settlement payments.  Compl. ¶¶ 1, 16, 32.  Emess alleges that this was part of an enormous Ponzi scheme that operated in a way to attract new investors and maintain the pretext that payments to victim-investors came from the structured settlements.  *Id*. at ¶¶ 1, 17.  As Judge Cohn recently noted in dismissing nearly identical Rothstein-related claims against TD Bank

pursuant to the PSLRA, conduct undertaken as part of a Ponzi scheme involving a security is actionable securities fraud:

> [a] Ponzi scheme is ongoing, and [] continues only so long as new investors can be lured into it so that the early investors can be paid a return on their "investment." Consequently, conduct undertaken to keep a securities fraud Ponzi scheme alive is conduct undertaken in connection with the purchase and sale of securities.

*Adams v. Rothstein*, No. 11-61688-CIV, 2012 U.S. Dist. LEXIS 64267, at *19 (S.D. Fla. May 8, 2012).  Further, the transactions at issue clearly involve securities as they were investments of money in a common enterprise with profits to come solely from the efforts of others.[5]  Emess itself labels its transactions in the Ponzi scheme as "investments," *see, e.g.,* Compl. ¶ 67, and, in fact, uses the word "invest" or a variation thereof in approximately 39 paragraphs of the Amended Complaint.  Accordingly, the alleged Ponzi scheme conduct cannot give rise to RICO claims and such claims fail as a matter of law.

## II.  Emess Fails to State with Particularity Facts Establishing a Plausible Claim For Relief Under Section 1962(c) of the RICO Act.

Section 1962(c) of the RICO Act makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign

---

[5]Numerous courts have held that similar investments in Ponzi schemes involve the purchase and sale of securities.  *See*, *e.g.*, *SEC v. Mut. Benefits Corp.*, 408 F.3d 737 (11th Cir. 2005) (viatical settlement contract); *SEC v. Wallenbrock*, 313 F.3d 532, 535 (9th Cir. 2002) (promissory notes); *SEC v. SG Ltd.*, 265 F.3d 42, 51 (1st Cir. 2001) (virtual shares in fictional company); *SEC v. Young*, No. 09-1634, 2011 U.S. Dist. LEXIS 39460, at *17-18 (E.D. Pa. Apr. 12, 2011) (limited partnership interest); *Febles v. S & G Investco Inc.*, No. 09-60988-CIV, 2010 U.S. Dist. LEXIS 19323, at *8 (S.D. Fla. Mar. 4, 2010) (investment in the foreign exchange currency market); *Burnett v. Rowzee*, No. CV-07-641, 2007 U.S. Dist. LEXIS 74275, at *12 (C.D. Cal. Sept. 26, 2007) (LLC membership interests); *Hays v. Adam*, 512 F. Supp. 2d 1330, 1337 (N.D. Ga. 2007) (investments in mobile billboards); *OSRecovery, Inc. v. One Groupe Int'l, Inc.*, 354 F. Supp. 2d 357, 369 (S.D.N.Y. 2005) (sale of gold-backed Internet currency); *SEC v. Phoenix Telecom, L.L.C.*, 239 F. Supp. 2d 1292, 1296-98 (N.D. Ga. 2000) (investment involving purchases and lease backs of coin-operated telephones); *SEC v. Better Life Club of Am., Inc.*, 995 F. Supp. 167, 174 (D.D.C. 1998) ("Advertising Pool" notes); *Gomez v. Leonzo*, 788 F. Supp. 604, 606 (D.D.C. 1992) (savings passbooks issued by investment business).

commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c).  Emess' allegations that TD Bank violated Section 1962(c) fail because Emess does not allege with Rule 9(b) particularity that the Bank is vicariously liable for and engaged in (i) conduct (ii) of an enterprise (iii) through a pattern of (iv) racketeering activity.  *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291-92 (11th Cir. 2010).

**A.  Emess Fails To Plead Facts Establishing that TD Bank Directed the Alleged RICO Enterprise.**

In order to plead a § 1962(c) RICO claim against TD Bank, Emess must allege both that the Bank and Rothstein engaged with a common purpose in a RICO enterprise and that the Bank *directed* the operation or management of that enterprise.  *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1264 (11th Cir. 2004).  The *Reves* court stressed that even the lower ranks of an enterprise must *control* that enterprise to be held liable under RICO.  *Reves*, 507 U.S. at 184.  Despite the chance to cure its deficient first complaint, Emess fails to allege specific facts showing that the Bank directed Rothstein's enterprise under the strict *Reves* "operation or management" test.  In fact, Emess alleges that Rothstein alone, who is serving a 50 year prison sentence, "initiated the Ponzi scheme that is the heart of this case" and "promoted, managed and supervised this theft scheme."  Compl. ¶¶ 3, 8, 10, 15-16.  At most, Emess claims that the Bank assisted in the scheme by carrying out Rothstein's orders, which does not give rise to RICO liability.  *Reves*, 507 U.S. at 179.

As noted in the Report (p. 9), this Court's holding in *Super Vision Int'l, Inc. v. Mega Int'l Comm. Bank*, 534 F. Supp. 2d 1326, 1338 (S.D. Fla. 2008) is instructive.  In *Super Vision*, the Court dismissed a RICO claim against a bank that allegedly associated with its customer to scam the customer's creditors.  The plaintiff claimed the bank (i) participated in a scheme to defraud

7

the plaintiff by allowing the customer to use the bank's facilities and services; (ii) was aware, or should have been aware based on its customer relationship, that the customer intended to establish the fraud; and (iii) allowed the fraud to proceed. *Super Vision*, 534 F. Supp. 2d at 1333. This Court dismissed the RICO claim for failure to satisfy the *Reves* test and held that none of these allegations permitted the court to infer that the bank directed "any aspect of the alleged enterprise, nor did [the bank] control the funds from [its customer] or [its customer]'s companies." *Id.* at 1338. Significantly, the Court found that claims that a bank officer served on the customer's company's board and a bank employee regularly met with the customer about his accounts, did not credibly suggest that "[the bank] was not operating as a legitimate, independent financial institution." *Id.* at 1338-39. *Compare, e.g.,* Compl. at ¶ 5; RICO Stmt. at 22.

Numerous other courts agree with *Super Vision* that allegations like those in the Amended Complaint show only that entities unwittingly assisted clients in what was later found to be fraud. These courts dismissed complaints for the plaintiffs' failure to claim that a bank or firm directed the enterprise rather than incidentally assisting the alleged scheme. For example, in *Schmidt v. Fleet Bank,* 16 F. Supp. 2d 340 (S.D.N.Y 1998), *abrogated on other grounds*, the court dismissed plaintiffs' complaint because, *inter alia*:

> [t]here is no doubt that plaintiffs have alleged wrongful acts that were allegedly of real importance to Schick's [Ponzi] scheme. These include allowing Schick access to the escrow accounts, approving Schick's overdrafts on 500 separate occasions, failing to notify the relevant authorities of the irregularities in the Schick accounts, misrepresenting to investors the status of the accounts and helping Schick to conceal the scheme generally. ***However, when reduced to their essentials, these are really allegations of <u>assistance</u> to the alleged RICO enterprise, not direction of it***.

*Id.* at 346 (emphasis added); *see also*, *Heffernan v. HSBC Bank USA,* No. 99-CV-7891, 2001 U.S. Dist. LEXIS 10996, at *17 (E.D.N.Y. March 29, 2001).

Consistent with Emess' original allegations,[6] none of Emess' new claims give rise to the Bank directing an enterprise. Instead, they entail legitimate banking operations or alleged assistance in an enterprise. For example, Emess alleges that the Bank:

1.  Engaged in legitimate banking activity through opening dozens of accounts for Rothstein in which money was deposited (Compl. ¶¶ 4(a), 28) and basing "Bank employees' bonuses [ ], in part, on deposits fueled by Rothstein's fraudulent investment scheme . . . [and] benefit[ing] from interest and fees earned based on the activity in Rothstein's accounts," Compl. ¶¶ 7, 28;

2.  Assisted rather than directed an enterprise through "violating federal banking laws requiring TD Bank (i) to monitor its accounts, (ii) to obtain complete customer information, (iii) to execute enhanced due diligence reviews, and (iv) to investigate fraud and money laundering alerts," (Compl. ¶ 4(b)) and by "*participat[ing]* in the management of the scheme" through "false represent[ions] to investors," "providing false and misleading documents," and "concealing the fraudulent activity," Compl. ¶¶ 5-6, 27 (emphasis added). *See, e.g., Schmidt*, 16 F. Supp. 2d at 346;

3.  Ignored "red flags" in Rothstein's account activity, which are allegations of assistance rather than directing an enterprise, Compl. ¶¶ 23, 41; *Schmidt*, 16 F. Supp. 2d at 346;

4.  Was aware of Rothstein's fraud, Compl. ¶¶ 7, 23, which Judge Goodman found to be an insufficient allegation of direction under the *Reves* test, *see Super Vision*, 534 F. Supp. 2d at 1338; Report at 10; and

5.  Misrepresented to investors that funds were "irrevocably locked," Compl. ¶ 25, which Judge Goodman refuted in his Report: "The lock-letters, meanwhile, were written and signed by Rothstein and only countersigned by Spinosa for TD Bank, a further indication that Rothstein *directed* and *controlled* the scheme in which TD Bank merely *participated*. Doc. 1-3, at 2." Report at 9.

TD Bank cannot be held liable under RICO for such alleged conduct, especially when Emess admits that it was Rothstein who promoted, managed, and supervised the Ponzi scheme. Accordingly, Emess fails to sufficiently allege that TD Bank directed the affairs of the alleged RICO enterprise.

---

[6] *See* Report at 8 ("In fact, the civil RICO statement alleges that *Rothstein* 'participated in and *controlled* the affairs of the Enterprise' while TD merely '*participated* in the affairs of the Enterprise.' Doc. 11, at 19 (emphasis added)," and Emess' "allegations do not show that TD Bank participated *in the direction* of the affairs of the enterprise.") (emphasis in original).

B.      **Emess Fails to Allege a Sufficient Pattern of Racketeering Activity.**

To satisfy the "pattern of racketeering activity" element, a plaintiff must allege predicate acts on the part of the defendant that demonstrate a continuing nature of criminal conduct. *H.J., Inc. v. Northwest Bell Telephone Co.*, 492 U.S. 229, 239-43 (1989). As Congress specifically designed RICO to create liability for longstanding racketeering activity and not isolated schemes, predicate acts must "amount to, or . . . otherwise constitute a threat of, *continuing racketeering activity*." *H.J.*, 492 U.S. at 240; *see also Jackson*, 372 F.3d at 1265 (holding that "[t]he continuity element of a pattern of racketeering activity is crucial to a valid RICO claim in order to ensure that the crime alleged is the sort of offense that RICO is designed to address – one that is part of a pattern of ongoing, continuing criminality.").

Continuity can be shown either through (i) repeated predicate acts over a closed but substantial period of time that show a defendant's long-term criminal activity or (ii) where a RICO action is brought before continuity can be established, a threat of continuity. *H.J.*, 492 U.S. at 241-42; *see also Special Purpose Accounts Receivable Coop. Corp. v. Prime One Capital Co., LLC*, 202 F. Supp. 2d 1339, 1347 (S.D. Fla. 2002). The first manner of proving continuity is referred to as "closed-ended continuity." In determining whether the plaintiff has established closed-ended continuity, courts look at the length of time of the ongoing predicate acts. *H.J.*, 492 U.S. at 242. The second manner of proving continuity is referred to as "open-ended," and its principal component is the "threat" of continuity. *Jackson*, 372 F.3d at 1265. A "threat" is established where "the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future" or where "the predicate acts or offenses are part of an ongoing entity's regular way of doing business." *H.J.*, 492 U.S.at 241-42. Emess fails to allege closed- or open-ended continuity.

1.      **Emess Fails to Allege a Pattern of Closed-Ended Continuity.**

This is Emess' second attempt at alleging close-ended continuity and it fares no better than its first try, which this Court rejected.  Despite this Court's direction that general allegations concerning the pattern of racketeering activity will *not* suffice, Emess again resorts to vague allegations that racketeering persisted for over four years.  Further, despite this Court's instruction that the relevant period for a RICO pattern is the interval between related *predicate acts*, Emess again alleges benign behaviors in its endeavor to artificially lengthen the pattern of racketeering activity.  Finally, despite this Court's guidance that the demarcation between closed-ended RICO activity and other, non-RICO fraudulent schemes is two years, Emess again presents a pattern of racketeering that, under its *most favorable* interpretation, falls short of this standard.  Accordingly, Emess' new allegations fail to meet the clear standards set forth by this Court for closed-ended RICO activity.

Emess initially concludes that the RICO violations purportedly committed by TD Bank began "in or around 2005."  Compl. ¶¶ 86, 97.  Nowhere in the other 131 paragraphs of its Amended Complaint, however, does Emess allege that *any* action was taken by *any* actor in 2005, much less allege a predicate act by TD Bank.  Indeed, aside from unsupported references in Paragraphs 86 and 97, the year 2005 is not mentioned in the Amended Complaint.  Thus, 2005 obviously cannot be the starting point for the closed-ended continuity period against TD Bank.

Emess next states that "[b]eginning in or about 2006, Defendant ROTHSTEIN initiated the Ponzi scheme that is at the heart of this case."  *Id*. at ¶ 15.  Emess alleges that "ROTHSTEIN worked with Gilbralter Bank to operate the scheme for several months beginning in or about 2006 and continuing through 2008."  *Id*. at ¶ 18.  At no point in the Amended Complaint, however, does Emess ever refer to any action taken by TD Bank in 2006.  In fact, apart from

Paragraphs 15 and 18 dealing solely with Rothstein and Gilbralter Bank, the year 2006 is never mentioned in the Amended Complaint.  Accordingly, 2006 cannot be the starting point for the closed-ended continuity period against TD Bank.

The first specific allegations involving TD Bank concern activity in 2007.  Emess contends that in November 2007, Rothstein opened three accounts at the Bank after discussions with Bank employees earlier that year.  *Id*. at ¶¶ 20, 21.  This normal banking activity is the extent of Emess' allegations for the year 2007.  Importantly, at no point in the Amended Complaint does Emess allege that TD Bank committed a *predicate act* in 2007.  Having failed to do so, Emess cannot argue that TD Bank's closed-ended continuity period began in 2007.  Indeed, as this Court found, "the relevant period under the closed-ended continuity test 'is the time during which RICO predicate activity occurred, not the time during which the underlying scheme operated or the underlying dispute took place.'"  Order at 10 (citations omitted).

Unable to allege any predicate act on the part of TD Bank for the years 2005, 2006, and 2007, Emess offers a scant eight paragraphs alleging "earlier related predicate acts of Defendants with regard to other investor-victims" from April 2008 until October 2009.  Compl. ¶¶ 43-50.  The only investor that Emess is able to identify from 2008 is Banyon Funding LLC ("Banyon").  According to Emess, (i) Banyon transferred millions into Rothstein's accounts at TD Bank in April 2008; (ii) TD Bank knew the money was connected to Rothstein's scheme; (iii) Rothstein quickly moved these funds through trust accounts at TD Bank and to Gilbraltar Bank; and (iv) TD Bank provided fraudulent lock letters to Banyon at an unknown date.  *See id*. at ¶¶ 43, 44.  These allegations, however, are insufficient to establish the necessary predicate acts on the part of TD Bank to extend the closed-ended continuity period.

First, the Banyon wire fraud allegation in Paragraph 44 of the Amended Complaint is subject to the heightened fraud pleading requirements of Rule 9(b).  *Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380-81 (11th Cir. 1997).  Emess' only allegation pertaining to TD Bank's alleged wire fraud against Banyon lacks particularity as it fails to identify the date on which the alleged fraudulent communication was sent, who from TD Bank sent the communication, who from Banyon received the communication, and how the communication was fraudulent.  *See* Compl. ¶ 44.

Likewise, Emess fails to properly allege that TD Bank committed money laundering against Banyon.  The predicate act of money laundering requires proof of scienter.  *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 949 (11th Cir. 1997).  Although a RICO plaintiff need not offer direct proof of scienter, "allegations of scienter cannot be merely conclusory and unsupported by any factual allegations."  *Portionpac Chem. Corp. v. Sanitech Sys. Inc.*, 210 F. Supp. 2d 1302, 1307 (M.D. Fla. 2002) (citation omitted).  Emess' sole allegation related to TD Bank's scienter to commit money laundering against Banyon is that "TD Bank knew that Banyon was wiring millions of dollars into RRA accounts at TD Bank, which were payments in connection with the structured settlement scheme."  Compl. ¶ 43.  This factually bereft allegation is legally insufficient to demonstrate that TD Bank had the scienter necessary to commit money laundering against Banyon.  *See Bill Buck Chevrolet, Inc. v. GTE Fla., Inc.*, 54 F. Supp. 2d 1127, 1133 (M.D. Fla. 1999) (finding the complaint's allegations that the defendant "knew" about fraudulent conduct insufficient to plead scienter and state a RICO claim).  Thus, Emess fails to plead that TD Bank committed predicate acts in 2008.

Even assuming that Emess has properly alleged TD Bank's predicate acts in April 2008, Emess is still unable to satisfy the closed-ended continuity requirement.  As this Court found,

"[t]he cases indicate that *two years* is more likely to be the demarcation between closed-ended RICO activity and other, non-RICO fraudulent schemes." *See* Report at 12.  At best, Emess alleges a pattern of racketeering activity from April 2008 until October 2009, which is clearly short of the essential two-year mark.  *See also CVLR Performance Horses, Inc. v. Wynne*, No. 11-00035, 2012 U.S.Dist. LEXIS 46020, at *45 (W.D. Va. April 2, 2012) (concluding that, based on an expansive review of case law, "the racketeering activity must usually have taken place over the course of *many years*" to satisfy closed-ended continuity) (emphasis added).

The short time period alleged by Emess is especially inadequate because Emess' RICO allegations concern only one scheme with a discrete goal.  *Jackson*, 372 F.3d at 1267 (holding that "courts have refused to find a closed-ended pattern of racketeering even when the scheme took place over longer periods of time"); *see also Efron v. Embassy Suites (P.R.), Inc.*, 223 F.3d 12, 18 (1st Cir. 2000) (noting that "the fact that a defendant has been involved in only one scheme with a singular objective and a closed group of targeted victims" supports the conclusion that there is no continuity).  Thus, Emess' allegations fail to establish close-ended continuity.

## 2.        Emess Fails to Allege a Pattern of Open-Ended Continuity.

In its first complaint, Emess stated that "Defendants engaged in a pattern of related and continuous predicate acts over a substantial, *but closed*, period of time."  *See* Compl. ¶ 73 (emphasis added).  In its Amended Complaint, Emess reverses course to allege open-ended continuity with respect to TD Bank and adds *one* paragraph addressing this issue.  According to Emess, "[t]he Defendants' criminal scheme would have continued except for the fact that F.B.I. agents arrested ROTHSTEIN in November 2009."  *Id. at* ¶ 41.  Nowhere in the Amended Complaint, however, is there a suggestion that the scheme threatens to continue into the future—the central inquiry under the open-ended continuity analysis.  *H.J.*, 492 U.S. at 241-42.

Emess' suggestion that the activity might have continued absent the FBI's intervention is inadequate.  As the 11th Circuit found in *Jackson*, such a suggestion "is not sufficient to allege open-ended continuity.  Indeed, as the investigation did reveal and ultimately sanction the defendants' activities, it is virtually certain that they will not engage in similar conduct in the future."  *Jackson*, 372 F.3d at 1269.  As in *Jackson*, Rothstein is incarcerated for 50 years and Emess did not allege that any TD Bank employees are likely to engage in a similar scheme in the future.  *Palm Beach County Envtl. Coalition v. Florida*, 651 F. Supp. 2d 1328, 1350 n. 23 (S.D. Fla. 2009) ("[p]laintiffs do not plead that the alleged predicate acts pose a threat of continued criminal activity, in fact, [p]laintiffs note multiple times in the amended complaint that the two criminal actors in the alleged scheme are currently in prison."); *see also Spadaro v. Caravella*, No. 11-61607, 2012 U.S. Dist. LEXIS 25965, at *81 (S.D. Fla. Feb. 29, 2012) (open-ended pattern of racketeering cannot be shown where none of the perpetrators still worked for the alleged enterprise).  Thus, Emess' allegations fail to establish open-ended continuity.[7]

### C. TD Bank is Not Vicariously Liable Under RICO for the Independent Actions of its Low-Level Employees.

Emess' RICO claims against TD Bank are based on the purported fraudulent actions of the Bank's Regional Vice President, branch manager, branch supervisor, and assistant store manager of the Weston, Florida branch.  *See* Compl. ¶¶ 5, 6, 62, 64.  Emess fails, however, to

---

[7] Emess also fails to properly allege every element of the necessary predicate acts.  *Am. United Life Ins. Co., v. Martinez*, 480 F.3d 1043, 1068 (11th Cir. 2007).  While Emess alleges that TD Bank committed wire fraud (18 U.S.C. § 1343) and money laundering (18 U.S.C. §§ 1956 and 1957), it provides no specific factual allegations demonstrating the intent necessary to support these predicate acts in accordance *BCCI Holdings*, 119 F.3d at 949.  Similar to the plaintiffs in *BCCI Holdings*, Emess does not allege any concrete facts that would permit an inference that TD Bank had a fraudulent intent or knew that the money transferred to or from Rothstein's accounts was derived from unlawful activity.  Rather, Emess' conclusory allegations conflate TD Bank's general knowledge of its everyday customer transactions – *i.e.*, awareness of fund transfers or provision of account statements to the customer (or to an authorized individual at the customer's direction) – with specific, actual knowledge of a customer's independent wrongful conduct.

allege any facts demonstrating that TD Bank authorized or subsequently acquiesced in the independent actions of its low-level employees.  Accordingly, Emess cannot hold TD Bank vicariously liable under RICO.

To subject a corporation to vicarious liability under RICO for its employees' wrongful acts, a plaintiff must allege that the employee committed acts that are both (i) within the course of employment and (ii) authorized or subsequently acquiesced in by the corporation.  *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1406-07 (11th Cir. 1994).  Significantly, courts "have been seemingly unanimous in holding that a defendant bank will not be held vicariously liable under RICO where, as here, a bank official or employee allegedly facilitated a fraud by third parties."  *Mikhlin v. HSBC*, No. 08-CV-1302, 2009 U.S.Dist. LEXIS 15629, at *29 (S.D.N.Y. Feb. 26, 2009) (detailing long-line of 2nd Circuit cases rejecting RICO claims against banks for alleged employee misconduct).  The same result is compelled here for two reasons.

First, Emess cannot establish that the TD Bank employees allegedly involved in the scam were acting within the scope of their employment.  *Oki Semiconductor Co. v. Wells Fargo Bank*, 298 F.3d 768, 771-72 (9th Cir. 2002) is instructive.  There, the court refused to impose vicarious liability on Wells Fargo when its bank teller used her position to orchestrate a RICO enterprise that simultaneously benefited the bank.  *Id*. at 772.  The Ninth Circuit found that "conspiring to violate RICO was outside the course and scope of [the employee]'s employment . . . [and] was well beyond her job description as a bank teller."  *Id*.  In addition, the court cautioned that extending vicarious liability in such situations would make employers liable for the conduct of non-employee RICO co-conspirators over whom the employer had no control and thereby "demolish the equitable balance the doctrine of respondeat superior seeks to achieve."  *Id.* Emess' Amended Complaint fits neatly into this reasoning.

Emess alleges that TD Bank personnel at the Weston branch "repeatedly" violated the Bank's policies to assist and conceal Rothstein's fraudulent scheme. *See* Compl. ¶ 31. Thus, like in *Wells Fargo*, such alleged acts were clearly beyond the scope of these Bank personnel's duties as defined by governing policies. Moreover, applying RICO to TD Bank in this situation would inequitably render it liable for Rothstein's scam, over which the Bank had no control. Therefore, holding the Bank vicariously liable is inappropriate. *Cesar Day v. DB Capital Group, LLC*, No. 10-1658, 2011 U.S.Dist. LEXIS 25303, at *67-69 (D. MD. March 11, 2011) (bank was not vicariously liable for its employees' wrongful acts even though scam was conducted from bank offices during business hours and enabled bank to obtain more customers).

Emess also fails to allege that any high-level employee of TD Bank authorized or acquiesced to the actions of Bank personnel at the Weston branch. Emess does not allege that TD Bank corporate was put on notice of the alleged scheme, allowed it to continue, or attempted to cover it up. *Williams Electronics Games, Inc. v. Barry*, 42 F. Supp. 2d 785, 793-94 (N.D. Ill. 1999) (no ratification of employees' fraudulent scheme where there was no allegation that corporate defendants were put on notice of scheme, allowed it to continue or attempted to cover it up). Instead, Emess contends that TD Bank is deserving of liability because its Regional Vice President and Weston branch manager were purportedly involved. This contention, however, fails. There is no allegation in the Amended Complaint—nor could there be—that a Regional Vice President or branch manager is an officer or director of TD Bank corporate, is involved in setting general corporate policies, or exerts any influence in significant corporate decisions. Indeed, as illustrated by their very titles, the Regional Vice President and branch manager are

limited to the locales in which they work—the Weston branch and its immediate surroundings.[8]

Courts have consistently refused to find vicarious liability under identical circumstances and

Emess' vicarious liability theory should similarly fail.  *See Schmidt*, 16 F. Supp. 2d 340 (vice-

president and branch manager of bank were not "operating at a particularly high level" for bank

to be held vicariously liable for their acts because "[t]here is no allegation that [employees] set

general corporate policies at [bank]" or had expansive authority); *Qatar Nat'l Navigation &*

*Transp. Co. Ltd. v. Citibank, N.A.*, No. 89-0464, 1992 U.S. Dist. LEXIS 14784, at *2, 22

(S.D.N.Y. Sept. 29, 1992) (refusing to impose vicarious RICO liability on bank for actions of

employee who was both an Assistant Vice-President and Branch Manager);  *Greyhound Fin.*

*Corp. v. J.R. Willyard*, No. 7-0811, 1989 U.S. Dist. LEXIS 16040, at *71 (D. Utah Dec. 26,

1989) (bank not vicariously liable where plaintiff was unable to show banks' participation in

fraud at level of its controlling officers and directors); *Cont'l Data Sys., Inc. v. Exxon Corp.*, 638

F. Supp. 432, 440 (E.D. Pa. 1986) (corporation not vicariously liable under RICO for actions of

branch manager, marketing manager, and senior sales representative).[9]

---

[8] In the Amended Complaint, Emess briefly references a discussion that Rothstein purportedly had with Florida Market President John Tolomer ("Tolomer") of Commerce Bank (which later merged into TD Bank) in Februrary 2007, fourteen months prior to the time when Emess contends Rothstein fraudulently used TD Bank for his "structured settlement" transactions.  *See* Compl. ¶ 20.  Significantly, there is no allegation that: (1) Rothstein discussed his "structured settlement" scheme with Tolomer at this time or that Tolomer had any knowledge regarding Rothstein's fraud; (2) Tolomer remained employed at TD Bank after the merger and during the time Rothstein perpetrated his fraud; and (3) Tolomer held a sufficiently high-ranking position within TD Bank's corporate structure after the merger and was not merely relegated to working in the Florida branch of a national corporation, as his title suggests.

[9] Contrast with *Cox*, 17 F.3d at 1407 (finding vicarious liability where corporation did not investigate allegations against employees, did not discipline employees until after convictions, and tried to cover up employees' wrongdoing); *Quick v. Peoples Bank of Cullman County*, 993 F.2d 793, 798 (11th Cir. 1993) (employee "held a sufficiently high-level position in the Bank's organizational structure to warrant the application of respondeat superior" where employee was assistant vice president of the entire bank and thus, "one of the top seven or eight officers in an organization that had forty-five to fifty employees.")

### III.    Emess Fails To Allege Adequate Facts To Establish a RICO Conspiracy.

In Count II of the Amended Complaint, Emess again tries to assert a RICO conspiracy claim against TD Bank.  "Section 1962(d) of the RICO statutes makes it illegal for anyone to conspire to violate one of the substantive provisions of RICO, including § 1962(c)."  *Am. Dental*, 605 F.3d at 1293.  A RICO conspiracy claim requires allegations that the alleged conspirators agreed to the overall purpose of the conspiracy or agreed to commit at least two predicate acts to further the scheme.  *Id*.  While a party may be liable for RICO conspiracy even without committing a substantive RICO offense, a plaintiff must still plausibly allege an illegal agreement to violate a substantive provision of RICO.  *Jackson*, 372 F.3d at 1269.  If not, the plaintiff only claims that the defendants conspired to commit benign acts.  *Id*.

As this Court previously found, Emess both fails to allege a substantive RICO violation *and* fails to allege specific facts showing that TD Bank agreed to the overall purpose of the alleged conspiracy or to violate a substantive provision of RICO: "to the extent that the complaint and civil RICO statement allege an agreement between TD Bank and Rothstein, it is an agreement to do something other than violate RICO."  *See* Report at 18-19; Order at 14 (dismissing RICO conspiracy claim).  Instead, Emess points to the Defendants' "professional relationship" and "financial gain" as RICO conspiracy elements.  Compl. ¶ 108; RICO Stmt. at 24-25.  Emess admits, however, that it was Rothstein—not the Bank—who used deposits for personal gain, and that the Bank's "financial benefit" was derived solely from its standard interest and bank fees.  *E.g.*, Compl. ¶ 28.  As the 11th Circuit has found, such conclusory allegations of conspiracy show at most "parallel conduct that could just as well be independent action" for which "there is an 'obvious alternative explanation' . . . that suggests lawful, independent conduct."  *Am. Dental*, 605 F.3d at 1294-1295.  Accordingly, Emess' formulaic

claims regarding the Bank's and Rothstein's agreement to conspire, *e.g.*, Compl. ¶¶ 103-113, do not give rise to a viable RICO conspiracy claim. *Am. Dental*, 605 F.3d at 1293.

## IV. Emess' State Law Civil Conspiracy Claim Fails as a Matter of Law.[10]

To allege civil conspiracy, a plaintiff must claim (i) an agreement between two or more parties, (ii) to do an unlawful act by unlawful means, (iii) the committing of an overt act in pursuance of the conspiracy, and (iv) damage to the plaintiff as a result of the act. The basis of a civil conspiracy claim must be "an independent wrong or tort which would constitute a cause of action if the wrong were done by one person." *Am. Diversified Ins. Servs. v. Union Fid. Life Ins. Co.*, 439 So. 2d 904, 906 (Fla. Dist. Ct. App. 1983). In other words, "an act which constitutes no ground of action against one person cannot be made the basis of a civil action for conspiracy." *Liappas v. Augoustis*, 47 So. 2d 582, 582-83 (Fla. 1950).

Emess alleges that TD Bank and Rothstein agreed to commit money laundering and wire fraud. Compl. ¶¶ 77, 79, 129. As previously discussed, however, Emess fails to allege those unlawful acts with the requisite particularity to give rise to a civil conspiracy claim. *See supra* note 7; *see also Begualg Inv. Mgmt. v. Four Seasons Hotel Ltd.*, No. 10-22153, 2011 U.S. Dist. LEXIS 108720, at *21-23 (S.D. Fla. Sept. 23, 2011) (dismissing civil conspiracy based on alleged fraud for failing to plead fraud per Rule 9(b) requirements). Further, neither money laundering nor wire fraud provide for an actionable civil claim to be an adequate basis for a civil conspiracy claim. *Liappas*, 47 So. 2d at 582-83 (dismissing civil conspiracy claim when alleged wrongful act did not provide for a civil cause of action); *see also Morganroth & Morganroth v. DeLorean*, 123 F.3d 374, 386 (6th Cir. 1997) (noting that violations of 18 U.S.C. §§ 1341, 1343 do not give rise to private causes of action.); *Dubai Islamic Bank v. Citibank, N.A.*, 126 F. Supp.

---

[10] TD Bank does not take the position herein that Florida law governs all of Emess' common law claims.

2d 659, 668 (S.D.N.Y. 2000) ("18 U.S.C. § 1956, does not express a private right of action").

Accordingly, Emess' civil conspiracy claim must be dismissed.

## <u>CONCLUSION</u>

For all of the above reasons, the RICO claims and civil conspiracy claims set forth in Emess' Amended Complaint should be dismissed with prejudice.[11]

---

[11] For purposes of any appeal, TD Bank does not waive its earlier motion to dismiss arguments regarding Emess' failure to sufficiently plead claims for fraudulent misrepresentation (Count III) and aiding and abetting fraud (Count IV).

Dated: May 16, 2012

/s/ Marcos D. Jimenez
Marcos D. Jimenez (Fla. Bar No. 441503)
mjimenez@kasowitz.com
Scott B. Cosgrove (Florida Bar No. 0161365)
scosgrove@kasowitz.com
Audrey M. Pumariega (Florida Bar No. 0085206)
apumariega@kasowitz.com
**Kasowitz, Benson, Torres & Friedman LLP**
1441 Brickell Avenue, Suite 1420
Miami, FL  33131
Telephone: (786) 587-1047
Facsimile: (305) 377-1664


/s/ William O. L. Hutchinson
Peter J. Covington (admitted *pro hac vice*)
pcovington@mcguirewoods.com
William O. L. Hutchinson (admitted *pro hac vice*)
whutchinson@mcguirewoods.com
Mark W. Kinghorn (admitted *pro hac vice*)
mkinghorn@mcguirewoods.com
**McGuireWoods LLP**
201 North Tryon Street, Suite 3000
Charlotte, NC 28202
Telephone: (704) 343-2000
Facsimile: (704) 343-2300

<u>**CERTIFICATE OF SERVICE**</u>

**I hereby certify** that a true and correct copy of the foregoing was served by CM/ECF

filing on May 16, 2012 on all counsel or parties of record on the Service List below.


<u>*s/ Marcos D. Jimenez*</u>
Marcos D. Jiménez


<u>**SERVICE LIST**</u>

Nina Stillman Mandel, Esq.
nsmandel@mandel-law.com
Mandel & Mandel LLP
169 E. Flagler Street, Suite 1200
Miami, FL 33131
(305) 374-7771
(305) 374-7776 (fax)
*Attorneys for Plaintiff*

Jason Brent Savitz, Esq.
jsavitz@mandel-law.com
Mandel & Mandel LLP
169 E. Flagler Street, Suite 1200
Miami, FL 33131
(305) 374-7771
(305) 374-7776 (fax)
*Attorneys for Plaintiff*

David Scott Mandel, Esq.
dmandel@mandel-law.com
Mandel & Mandel LLP
169 E. Flagler Street, Suite 1200
Miami, FL 33131
(305) 374-7771
(305) 374-7776 (fax)
*Attorneys for Plaintiff*